MORINGLANE & LLEDÓ, Plaintiff and Appellant, *v.* RICARDO SKERRET, Defendant and Appellee.

No. 5541. Argued June 15, 1932.—Decided April 7, 1933.

R. V. *Pérez Marchand* for appellant. *López de Tord & Zayas Pizarro* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

The amended complaint on which this action is based stated two causes of action. In the first, the sum of $1,610 was claimed for the use of a certain barge, and in the second, the

plaintiff claimed the return of the barge, duly repaired, or its return and payment of the expenses necessary to repair it, plus $10 per day until its formal return, and the costs of the action.

The defendant answered opposing the claims of the plaintiff and alleging that he obtained possession of the barge from the Municipality of Ponce, which delivered it to him as an aid to the completion of a certain work in which the municipality was interested.

The case went to trial. Abundant documentary and oral evidence was taken, and the court finally decided the case by rendering judgment for the defendant, with costs.

The district court delivered a long opinion in support of its decision, in which, after weighing the evidence, it made the finding that the existence of a contract between the plaintiff and the defendant was not shown. The court was of the opinion that the lessor should have claimed the leased property from the Municipality of Ponce, and not from the defendant, when it was not returned at the proper time, and that the municipality would have recourse against its mayor, if the latter had improperly sanctioned the use of the barge, and against the defendant, if the latter had returned the barge in a damaged or unserviceable condition. The court also found that the evidence produced did not show the existence of any quasi contract between plaintiff and defendant.

The plaintiff appealed from the judgment, and assigned in its brief the commission of five errors by the court: First, in not holding that the action brought is based on sections 1056 and 1788 of the Civil Code; second, in holding that the barges "Evarista" and "Number 21" were not included in the lease contract between the municipality and Moringlane, and that "Number 21" was excluded from the contract because it had been previously delivered to the defendant by the mayor; third, in holding that the defendant was not liable to the plaintiff, notwithstanding his admission that the barges had been delivered to him by the mayor, without authority;

fourth, in not holding that the defendant was obligated to pay the plaintiff for the use of the barge, and to return the same to it in the same condition that he received it; and, fifth, in rendering judgment for the defendant, with costs.

The fundamental question to be considered and decided is whether the plaintiff showed the existence of a quasi contract from which the rights claimed by it might be derived.

The first thing which the plaintiff proved at the trial was that the Municipality of Ponce, by deed of January 2, 1929, pursuant to its ordinance No. 69, series of 1928, and as a result of an auction, leased to Ernesto M. Moringlane the 56 barges, 3 tugboats, boats, yawls and other items of its lighterage service, for a term of one and one-half years, at a rental of $24,000 a year. The 56 barges are each described in the deed, and among them are found the two referred to in this action.

Then the plaintiff showed the existence of the partnership Moringlane & Lledó, constituted on January 23, 1929, by public deed recorded in the Mercantile Registry for the Southern District, Ponce. The fourth clause of the deed states: "The partnership does not contribute any capital; but the member Mr. Moringlane contributes to it all of the property leased from the Municipality of Ponce, and Mr. Lledó contributes his personal services."

Agustín Lledó, member of the partnership, then testified, and he referred to the defendant, in part, as follows: "We did not lease any barge to him, that is, we failed to receive one of the barges when the barges were delivered; barge No. 21 was not delivered to us. . . Yes, sir. It was included in the lease of the 56 barges. . . That barge was delivered by the mayor. It was in the possession of Mr. Ricardo Skerret . . . he was using it in connection with a pile driver; he was using it in his work. . . I wrote a letter stating to him that we had leased the barges of the municipality, and that those barges were included, and that that barge would cost him ten dollars a day. At the end of each month I would

send him a bill. . . And Don Ricardo would send word to me that he would come to my office. . . He neither came to my office nor returned the barge. The barge is in his possession, at the place where they are building the bulkhead. . . Don Ricardo Skerret used it for about six months and then put it aside there. . . It was never taken to the shipyard of Moringlane & Lledó. We pay $2,000 a month for the lease, for all the barges. We have other expenses.

"Skerret used the barge in his business for six months. During this time I was sending him monthly accounts; I sent him four monthly bills, and he was putting me off; he continued to put me off and to postpone, and this and that, and he never did show his face in my office in connection with this matter. I received a reply when he sent word to me that he had vacated the barge, and I went to see the barge, and it was not fit for work; the barge could not be used, because it was full of water, full of sand, and in poor condition. And I went ashore and spoke to Mr. Skerret's representative —I do not know who he is—that is all. . . I never spoke to Mr. Skerret personally. I refused to receive delivery of the barge. He tried to deliver it to me, but I refused to receive it. . . It was in bad condition, and now it is worse. . . It is unserviceable. . . It would cost not less than $1,000 to rebuild it; to rebuild it and place it in the same condition as when it was delivered.

"I did not receive any excuse or compensation for the damage caused by the loss of use of the barge. . . Neither from Mr. Skerret nor from the municipality." To the question: "Have you addressed yourself to the municipality stating that since that barge is not serviceable, and has not been delivered to you, it should not appear in the tonnage leased to you, on which you pay rent to the municipality, and that they should deduct the rental of that barge?" he finally answered: "I have not done so, because the lessor was a municipal government, and there is another government now in possession." The witness bases his claim on the fact that

the barges were awarded to Mr. Moringlane in December, at the public auction held at Ponce. He entered into no contract with Skerret. On other occasions he had leased barges of the same size and had charged the same rental. He did not notify the municipality that Mr. Skerret was in possession of that barge and had not delivered it. He made no request to the Municipality of Ponce in that respect.

The letters to which the witness referred in his testimony read as follows:

"Playa de Ponce, P. R., January 4, 1929. Mr. Ricardo Skerret, Directing Engineer of the Ponce Bulkhead, Playa Ponce, P. R.—Sir: I wish to advise you that from this date I have taken charge of all the property used in the lighterage service of the Municipality of Ponce, by virtue of the award made in my favor at the public auction held for the purpose of leasing the said property. At the same time that I advise you of that fact, I wish to inform you that from this date I shall charge you for the rental of the two barges which you are using, at the rate of $10 per day for one of them, and $5 for the other, the rental to be paid every fifteen days. You will please take note of this. I am at your disposal in anything that I can do to be of service to you. Respectfully, E. M. Moringlane, by Agustín Lledó."

"January 7, 1929. Mr. E. M. Moringlane, Playa de Ponce. Sir: I acknowledge receipt of your letter of January 4, which I have just received, wherein you advise me that you will charge me for the rental of two barges which I am using, at the rate of $10 a day for one, and $5 a day for the other. I wish to advise you that, of course, I do not agree to this, and I have ordered that the barge for which you seek to charge $5 a day be returned immediately, and the other will be returned to you as soon as the equipment which is now on board is removed. These two barges were delivered to me by the Mayor of Ponce on the understanding that they were not to be used for commercial purposes, but in laying out on the ground the plan for the preliminary work on the bulkhead. I had expected that this would be made known to the person obtaining the award of the equipment. Since this was not done by the proper party, in the manner which I expected, as I have said, I have decided to return them. Respectfully, R. Skerret."

"Playa de Ponce, P. R., June 6, 1929. Mr. Ricardo Skerret, Directing Engineer of the Ponce Bulkhead, Playa de Ponce, P. R.

Dear Sir: Permit us to remind you that you have now used one of our barges for five months, without having paid us anything as yet for the rental of the same. Please take note that we have charged your account with the sum of $1,470, that is, 147 days, from January 4 last to May 31, and we should appreciate your advising us on what date we may send for this amount. Thanking you in advance for your attention to this letter, we are pleased to remain, very truly yours, Moringlane & Lledó.''

''June 12, 1929. Messrs. Moringlane & Lledó, Playa de Ponce, Ponce, P. R.—Attention Mr. Lledó: Dear Sirs: Replying to your letter of June 6, dealing with the matter of the barge used in the work of laying out the plan for the bulkhead, I beg to advise you that the said barge was gratuitously delivered to me by the former Mayor, Mr. Guillermo Vivas Valdivieso, to be used in the laying out of the plan for the bulkhead, which work the undersigned contractor performed, also gratuitously, for the Municipality of Ponce. When the former Mayor, Mr. Guillermo Vivas Valdivieso, left, he did not notify me that I was bound to pay a rental for the aforesaid barge. Indeed, I have not been officially notified that this barge has been leased to anyone. Nevertheless, it is not my intention that anyone should be prejudiced on account of the use of this barge, and with this in mind I would suggest that you address yourself to the present administration, making such claim as you may deem prudent with respect to the use of the said barge. I am, very truly yours, R. Skerret.''

Two more witnesses testified for the plaintiff, Juan Barnés and Isaac Nethan. The former, a bookkeeper for the plaintiff, testified that, up to the date of the trial, the plaintiff had expended, in addition to the $2,000 monthly rental, $3,152.25 for insurance premiums, $6,264.02 for repairs, $6,599.30 for salaries, and $2,208.42 for general expenses. The latter, an employee of the plaintiff, and formerly of the municipality, testified that when barge No. 21 was delivered to the defendant it was in good condition, and when it was returned by him it was unserviceable and in need of considerable repairs.

The witnesses for the defendant were Guillermo Vivas, Víctor E. Auffant, and the defendant himself.

Vivas was the Mayor of Ponce in the years 1927 and 1928. In that capacity he delivered barge No. 21, as an act of courtesy toward the gentlemen who had obtained the contract for the work in the port of Ponce. Mr. Auffant advised him that the plan must be laid out on the ground in order to begin the work. "Mr. Marxuach, engineer for the Department of the Interior, intervened to fix the points, and then I supplied the barge so that they might do this work. I could not cede the municipality's barge, because the law did not permit it. It was only a matter of courtesy; to the contractor. Since a municipal project was involved, I wanted to cooperate in it. During the time that I was mayor, nothing was paid for the work of laying out the plan on the ground."

Auffant is a civil engineer. He worked with Skerret. When the work of laying out the plan for the works of the port of Ponce was begun, engineer Marxuach, representative of the Department of the Interior and directly entrusted with the inspection of the work, wanted it done from the sea, and not from shore. For this purpose the witness asked the mayor to furnish a vessel, since the contractor was receiving no compensation for this work, which required cooperation, and the mayor had no objection to turning over the barge. No payment was made. The witness explained the use to which the barge delivered, No. 21, was put. It did not tax its capacity. The use of the barge accelerated the work, to the benefit of the contractor as well as of the municipality, but the work done was useless, for it was abandoned. The contractor acted at the request of the inspecting engineer.

The defendant, an engineer and contractor, testified that the barge was used because the engineer in charge of the work wanted the plan to be laid out from the sea; that he approached the mayor through Auffant, and obtained the barge for use only in laying out the plan, without paying anything.

The barge, the witness stated, was not damaged by the use to which it was put. No repairs had to be made to it.

It was returned in the same condition that it was received. It was used only in the work of laying out the plan. "By laying out the plan is meant the drawing of lines, for the purpose of excavating, in the case of a building, or of driving piles, in case of a bridge or bulkhead; these lines may be drawn from shore, from what we call stations, where the engineer places his instruments. . . This work of laying out the plan should have been done by the person who prepared the data for the drafting of the project, and he should have left, on the ground, the points to be followed later in carrying out the work. The engineers of the Department of the Interior are the ones in charge of that. It did not benefit me; it benefited the engineer of the Department of the Interior. It only represented expense to me, for working on land costs me, say, a thousand, and working like that costs me three thousand."

Such is the case. The question involved in it, and to be decided, is not easy indeed. While studying it, at times it has seemed to us that the plaintiff is right, but when we have tried to support this conclusion we have been unable to find a definite relationship by virtue of which the defendant is bound to the plaintiff in the manner claimed.

Our Civil Code expressly recognizes that obligations arise not only from the law and from contracts, but also from quasi contracts, which it defines as "licit and purely voluntary acts by which their author becomes obligated to a third party, and from which there sometimes results a reciprocal obligation between the parties concerned." Sections 1042 and 1787 of the Civil Code, 1930 ed. The code regulates two types only, namely, management of the business of another and acceptance of a payment not due; but we agree with the appellant that this does not mean that these are the only kinds of quasi contracts which give rise to obligations enforceable in the courts of justice. So that, even though this case does not involve the management of the affairs of another, or the receipt of a payment not due, if any liability of the defend-

ant to the plaintiff enforceable in a court of justice could be derived from the licit and voluntary acts performed by the parties, without previous agreement, the courts would be bound to recognize such a liability, with all its consequences. That proposition is simple enough. The difficulty lies, we repeat, in deciding whether or not the facts of this case show a perfect quasi contract between the plaintiff and the defendant.

By virtue of the lease to which we have referred, the plaintiff was entitled to have the municipality deliver to it the barges which had been leased. Two of them were in the possession of the defendant. The plaintiff decided to deal directly with the defendant instead of with the municipality. We have seen its letter of January 4, 1929, and the reply made by the defendant in his letter of January 7.

If the defendant had replied on January 7 in the manner in which he wrote on June 12 following, there would be no question, but he assented to dealing with the plaintiff, and this assent on his part is what seems to initiate the legal relationship on which the plaintiff bases its claim.

Nevertheless, even though this is so, we find that, in his first reply, the defendant positively refused to pay any rental, and claimed that he was in possession of the barges of the municipality because the latter had delivered them to him before the lease was made, and only promised to return them, one of them at once, and the other as soon as he had withdrawn the equipment which he had placed on it.

He complied with the promise of immediate return of one barge, but not with the promise of conditional return of the other. Upon the defendant's failure to comply within a reasonable time, what were the rights of the plaintiff? In our opinion it should have continued to demand the return of the barge, and if it did not obtain this, it should have notified the lessor, with which it had executed the contract which clearly gave rise to rights and obligations, for the purposes of such action as might be proper. It did not do so. It

preferred to allow the case to remain uncertain. And in our opinion it does not now have a clear and perfect right on which to base its claim against the defendant directly, especially since the record does not clearly show that the acts of the defendant have caused the plaintiff any actual damage which it may not recover by dealing directly with its lessor.

These being the circumstances of the case, the judgment appealed from must be affirmed, with the exception of the pronouncement of costs.